UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ARMANDO TORRES,

                    Plaintiff,

                                                    **Hon. Hugh B. Scott**

                                                    14CV62S

            v.                                      **Order**


SUPERINTENDENT DALE A. ARTUS, et al.,

                    Defendants.

---

Before the Court is <u>pro se</u> plaintiff's motion to compel (Docket No. 74), responding to the objections and responses to his discovery demands.  This Court initially presumed that this document was plaintiff's response to discovery demands.  During a status conference on March 1, 2016, plaintiff renewed his motion to compel (Docket No. 102).  This Court ordered defendants to respond to the motion within ten days and the motion then would be deemed submitted (<u>id.</u>).  Defendants filed their response on March 11, 2016 (Docket Nos. 104, 105[1]).

While plaintiff's motion was pending, defendants moved to dismiss claims against some of them (Docket No. 83), which was granted (Docket No. 100; <u>see</u> Docket No. 92, Report & Rec. of Aug. 21, 2015); familiarity with the Report and Recommendation of August 21, 2015, is presumed.

---

[1]Apparently defendants refiled their response to include all defendants.  This Court will cite to the latter document, Docket No. 105, filed on behalf of more parties.

BACKGROUND

This is a pro se civil rights and Americans With Disabilities Act, 42 U.S.C. §§ 12101, et seq., action in which plaintiff, an inmate currently held in the Wende Regional Medical Unit ("RMU") due to his medical condition, seeks access to the Wende Correctional Facility ("Wende") law library (contained in a separate building) or reasonable accommodation for his disability to afford him that access.  Plaintiff alleged eleven causes of action.  Plaintiff complains here about events from December 2009 and various dates in 2010, 2011, and 2012 for misdiagnoses, mistreatment of different ailments he suffered while incarcerated, and placement in the RMU.  Subsequent motions sought to supplement these claims with events from 2013 and 2014 (Docket Nos. 40, 43).  Plaintiff is physically unable to walk to the Wende law library.  Within his Complaint (id., Docket No. 1) is his request for preliminary injunction to grant him access to the law library (id. at 22-23).  He essentially claims that defendants deprived him of reasonable accommodations for his kidney ailment (in violation of the Americans with Disabilities Act) and misdiagnosed and mistreated that (and other conditions).

Plaintiff filed the original Complaint on January 30, 2014 (Docket No. 1).  He then moved for in forma pauperis status (Docket No. 2), which was granted (Docket No. 5).  Defendants responded to the preliminary injunction requests contained in the Complaint (Docket Nos. 12, 14), as well as served their Answer to the Complaint (Docket No. 15).

Plaintiff moved for a preliminary injunction and temporary restraining Order (Docket No. 16) and this Court recommended denying injunctive relief and granting plaintiff's motion to amend the Complaint (Docket No. 50).  Absent any objections, then-Chief Judge William

Skretny adopted this Report (Docket No. 53).  Plaintiff later moved for reconsideration (Docket No. 55) but this motion was denied (Docket No. 58).

Meanwhile, plaintiff's first motion to supplement this Complaint (Docket No. 31) was granted in part, denied in part (Docket No. 40), which was affirmed by Chief Judge Skretny (Docket No. 45).  Plaintiff filed his notice of appeal from this interlocutory Order (Docket No. 47) but later wrote to the Court of Appeals to withdraw the appeal (Docket No. 52), which that court dismissed (Docket No. 63).  Plaintiff also filed a second motion to supplement this Complaint, to allege incidents from 2013 (Docket No. 43); that motion was denied but plaintiff was to file and serve an Amended Complaint as with fully exhausted claims as well as claims originally alleged by November 25, 2014 (Docket No. 49).  This Court issued a Scheduling Order, with discovery scheduled to be completed by May 1, 2015, and ordering parties to exchange initial disclosure (Docket No. 54).

*Plaintiff's Motion to Compel*

On January 8, 2015, plaintiff filed his document production demands that he served upon defendants, seeking 93 categories of documents (Docket No. 60).  Defendants sought an extension of time to respond to these demands (Docket No. 64) noting the "voluminous nature of the demand" consisting of 93 paragraphs of demands with multiple demands sought from 21 defendants, which was granted (Docket No. 65).  On March 25, 2015, defendants served and filed their responses to these demands (Docket No. 66, hereinafter "Defs. Discovery Response"; see Docket No. 74, Pl. Motion to Compel, Ex.).  Defendants filed a 30-page response with over 400 documents attached as responsive to plaintiff's demands (Docket No. 66, Defs. Discovery Response; see Docket No. 105, Defs. Atty. Decl. ¶ 9).  In addition to initial disclosure provided

to plaintiff (Docket No. 62), defendants produced over 4,600 pages of medical records to

plaintiff (Docket No. 105, Defs. Atty. Decl. ¶ 9).  On April 9, 2015, defendants supplemented

these responses (Docket No. 69), in a 5-page document, with over 230 pages of attached

documents.

On May 18, 2015, plaintiff filed his motion to compel (Docket No. 74).  Essentially,

plaintiff objects to the objections raised by defendants to various demands.  During the status

conference of March 1, 2016, plaintiff still sought the policy of Elmira Correctional Facility

("Elmira") on the use of restraints for medical transport of inmates; investigation reports from

the New York State Education Department Office of Professions as to defendant Nancy Olsen or

the State Commission of Corrections.

Specifically, plaintiff compels production on Request #1-3, 7-8, 10, 12, 13-15, 18, 19, 23-

25, 34, 37, 39-41, 42, 43, 60, 62, 65, 66, 67, 69, 75, 82, 78, 79, 80, 81, 87, 90, and 91(see

generally Docket No. 74; Docket No. 105, Defs. Atty. Decl. ¶¶ 10-14, 16, 20-24, 26, 28-32, 35,

43-53).  Requests #1-3 involve communications arising in Grievance WDE #32054-09.

Requests #7-8 seek Department of Corrections and Community Supervision ("DOCCS") policies

on use of restraints on inmates during medical transport.  Request #10 sought DOCCS

investigative reports on hemodialysis policies.  In Request #12, plaintiff wants "all or any"

DOCCS Pro #3A diet preparation guides when providing "all modified diets".  Requests #13-15

seek federal, state or local laws and regulations regarding handling and disposal of infectious

waste.  Next, plaintiff wants in Request #18 any and all investigation matters pertaining to

defendant Olsen with the New York State Education Department, Office of Professions.  In

Request #19, plaintiff wants produced documents for Grievance WDE#33369-10 and the alleged

misconduct of Olsen, but now argues that the wrong Bates numbered documents were produced but plaintiff eventually found the grievance, as he did for documents responsive to Request #33. Request #23-25 seek investigation reports from the State Education Department, the United States Department of Health and Human Services, and Prisoners Legal Services.  Request #34 sought investigation reports by the State Health Department in a particular investigation.  In Request #37, plaintiff seeks DOCCS directives or policy regarding the use of ice chips by dialysis inmates.  In Requests #39-41, plaintiff seeks investigations he presented to the Department of Health, State Commission of Correction, and the State Professional Misconduct Enforcement System, while in Request #42 plaintiff seeks similar reports from the Commission of Correction.  Request #43 seeks investigation reports from a particular Department of Health investigator for his complaint in October 2011.  Request #60 seeks plaintiff's medical records from the Erie County Medical Center from 2009 to present.  Request #62 seeks internal memoranda on typewriting supplies furnished in the RMU.  (See generally Docket No. 74, Ex.)

In Request #65, plaintiff seeks Naphcare Inc.'s medical records of his care from 2009. Request #66 seeks DOCCS agreements and proposals for reconstruction of Wende Correctional Facility under the Americans with Disabilities Act.  Plaintiff in Request #67 seeks the rear arsenal sign in/sign out logs for Wende from 2009 to note the entry and departure of certain Naphcare employees (mostly current defendants save Ginger Booth, John Lascala, and Timothy Gorny).  Plaintiff seeks mental health referrals and interviews in 2013 in Request #69.  In Request #75, plaintiff asks for "all and any Erie County medical [sic] Center Hemodialysis Unit Fresenius Operation Instruction Manual."  Request #82 seeks any and all restrictions on dialysis patients at Elmira.  Request #78 seeks DOCCS contract with Naphcare Inc., including Naphcare

employee "roast list" and employment hours, while Request #79 seeks similar DOCCS contracts with Naphcare including treatment in the Erie County Medical Center.  In Request #80, plaintiff wants DOCCS "shop folder" from 2008 to present.  Request #81 seeks policies regarding restraining dialysis inmates in Elmira when these inmates are transported.  In Request #87, plaintiff wants the RMU third floor logs from 2012-14.  Request #90 seeks diagrams or outlines of Wende, depicting (for example) the law library and its work station capacity, gym area bath, and A-Block and D-Block.  Finally, Request #91 seeks the RMU operation manual.  (See generally id.)

For these inadequately answered requests, plaintiff generally argues that defendants or defense counsel have access to the sought items and that the items sought are relevant to his claims (see generally Docket No. 74).

Plaintiff included additional demands in this motion (id. at 13-15), seeking internal Naphcare reprimands from 2009-15; list of Naphcare equipment in the dialysis unit; redacted inmate grievances on Wende-Naphcare hemodialysis unit; redacted reports of other inmates with fistula or catheter infections from 2012-13; Naphcare/Wende Dialysis Unit nurse station logs from 2010-15 for complaints about the cleanliness of that facility; Wende operation manuals for the dialysis unit and the law library; approvals for construction of the Dialysis Unit from the Health Department or other approving agencies (id.).  During a status conference on July 14, 2015, plaintiff complained that defendants had not received their discovery responses. Defendants responded that they fully complied with plaintiff's demands.  Plaintiff was to report at the next conference, on August 27, 2015, whether he had received discovery.  (Docket No. 82.)  Given defendants later motion to dismiss (Docket No. 83), the August 27 conference

was canceled, subject to rescheduling after that motion was considered (Docket No. 88), which

eventually was held on March 1, 2016 (Docket No. 102).  Defendants did not file additional

discovery responsive to plaintiff's supplemental requests (despite further supplementing their

responses to plaintiff's initial round of discovery requests, Docket No. 85) and did not address

these supplemental requests in response to this motion.

Meanwhile, defendants respond to the motion generally that they complied with

plaintiff's discovery demands and made appropriate objections to them (Docket No. 105, Defs.

Atty. Decl. ¶ 8).  As for plaintiff's Requests #1-3, defendants argue that they produce documents

related to Grievance WDE #32054-09 in DOCCS possession (id. ¶ 10).  Plaintiff's produced

medical record contained correspondence plaintiff sought with DOCCS medical personnel (id.).

Defendants also argue that this grievance was alleged in the First and Second Causes of Action,

claims that were dismissed as time barred (id.).

As for plaintiff's request for a policy regarding restraining inmates in medical transport,

his Requests #7 and 8, defendants counter that no such policy exists and provided Directive 4933

(id. ¶ 11; Docket No. 66, Defs. Discovery Response at 6).  Similarly, there was no policy for

hemodialysis (Docket No. 105, Defs. Atty. Decl. ¶ 12) (Request #10).

Defendants state that they produced the Pro #A diet prescribed for plaintiff (Request

#12), with production of all other Pro #A diet plans being burdensome (Docket No. 105, Defs.

Atty. Decl. ¶ 13).

On Requests #13-15, defendants next claim they produced regulations regarding handling

and disposal of infectious waste (Docket No. 105, Defs. Atty. Decl. ¶ 14).

7

Defendants claimed they produced Olsen's reports (Request #18) in their supplemental response (Docket No. 105, Defs. Atty. Decl. ¶ 16; see Docket No. 69, at 233-34 (responding to Request #31, Bates Nos. 5582-84).

On Request #19, defendants initially produced the sought grievance records (Docket No. 74, Ex., Response to Request #19, Bates Nos. 4677-4889).  They now contend that, despite the error in Bates numbering, plaintiff found the relevant records produced to him (Docket No. 105, Defs. Atty. Decl. ¶ 20; see also Docket No. 74, Ex., Bates Nos. 5317-25, responsive to Request #33, instead of produced Bates No. 5254-5530; id., Pl. Affirm. at 6).

On Request #23-25, 34, 39-42, and 75, defendants argue that plaintiff seeks documents from them that are in the possession and control of third parties (most state agencies other than DOCCS) and not in defendants' possession or control (Docket No. 105, Defs. Atty. Decl. ¶¶ 21-22, 24, 26, 44; see id. ¶¶ 28 (Request #43), 17-19), see, e.g., New York v. AMTRAK, 233 F.R.D. 259, 266 (N.D.N.Y. 2006) (fact Attorney General's office represents defendant does not subject all state agencies to discovery).  They suggest that plaintiff could seek these materials from their sources via FOIL (e.g., Docket No. 105, Defs. Atty. Decl. ¶ 19), at least from the New York State agencies.  On Request #43, defendants also stated that they produced the sought Fidell letter (id. ¶ 28).

Regarding plaintiff's Erie County Medical Center records, defendants responded that they were seeking those records (Docket No. 74, Ex., Defs. Response to #60).

On Request #62, defendants argue that no responsive records exist (Docket No. 105, Defs. Atty. ¶ 30).

As for Requests #65 and 69, defendants argue that that these records were produced with his medical records (Docket No. 105, Defs. Atty. Decl. ¶¶ 31, 43).  Defendants claimed they also produced the Naphcare contract with DOCCS (id. ¶ 46; Request #78).

On the various logbooks plaintiff seeks (Requests #67, 87), defendants claim these Requests were overly broad and burdensome, as are plaintiff's request for proposals for Americans with Disability Act reconstruction of Wende (Request #66) (Docket No. 105, Defs. Atty. Decl. ¶¶ 35, 50-51, 32).  Defendants next claim sever other categories of requests were overly broad or burdensome, involving facilities other than Wende (Requests #82, 79, 80-81, 87, 91) (Docket No. 105, Defs. Atty. Decl. ¶¶ 45, 47-49, 50-51, 53).

Defendants object, due to security concerns, to producing diagrams of Wende to an inmate plaintiff (Docket No. 105, Defs. Atty. Decl. ¶ 52; Request #90).

Defendants also note that some of plaintiff's requests are for dismissed causes of action and hence should be denied as moot (e.g., Docket No. 105, Defs. Atty. Decl. ¶¶ 10, 15).

## DISCUSSION

I.    Standards

Discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention.  See 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2288, at 655-65 (Civil 2d ed. 1994).  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things

and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1) (effective Dec. 1, 2007).

Federal Rule 26(b)(2)(i) allows this Court to limit the scope and means for discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Under Rule 26(c), this Court may issue a protective order to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense" by not having a proposed disclosure or discovery device, or conditioning the time and manner of that discovery. Fed. R. Civ. P. 26(c)(1), (1)(B)-(C); see id. R. 26(c)(1)(D) (limit the scope or the matters inquired into).

Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an Order compelling discovery, with that motion including a certification that the movant in good faith conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention. Fed. R. Civ. P. 37(a)(2)(A). Similarly, under Rule 26(c), prior to obtaining a protective order the movants must certify that they have in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court intervention, Fed. R. Civ. P. 26(c). Under Rule 26(c), the Court has power to protect against abuses in discovery. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984). The appropriateness of a protective Order is a balance of the litigation needs of the requesting party and the protectable interests of the party from whom discovery is sought. Mitchell v. Fishbein, 227 F.R.D. 239, 245 (S.D.N.Y. 2005). This Court has broad discretion in issuing such a protective order. Seattle Times, supra, 467 U.S. at 36.

II.     Plaintiff's Initial Requests

Many of plaintiff's requests and defendants' objections and responses are common and can be considered together.

A.     Already Produced Items

First, plaintiff's motion to compel materials defendants have produced (either in initial disclosure or in response to plaintiff's requests, including materials produced over objection) is **denied** (Request #1-3, 13-15, 18, 19, 43, 65, 69, 78).  Defendants claim that they ordered plaintiff's Erie County Medical Center records (Docket No. 105, Defs. Atty. Decl. ¶ 29; Request #60) and it was produced in their second supplemental discovery filed with the Court (Docket No. 85).  Defendants produced 500 pages of that record.  Thus, plaintiff's motion to compel production of this request (Request #60) is **denied**.

B.     Defendants' Lack of Documents and Third Party Documents

Alternatively, although the New York State Attorney General's office represents defendants here as well as various state agencies (cf. Docket No. 74, Pl. Affirm. at 6), those agencies are not parties to this action to compel defense counsel here to produce documents from them in this case.  State agencies are not "entities of each other" as plaintiff argues (id.).  Some of plaintiff's Requests also are directed to non-New York State agencies that are not represented by the Attorney General's office, such as the United States Department of Health and Human Services (Request #24) and Prisoners Legal Services (Request #25).  Discovery under Federal Rule 34 is from parties to the litigation only, Fed. R. Civ. P. 34(a)(1) (a party may serve on "any other party a request" to produce items "in the responding party's possession, custody, or

control").  Plaintiff's motion to compel production of these non-parties' materials (Request #23-25, 34, 39-41, 42, 43, 62) is **denied**.

Where defendants assert that no responsive documents exist, plaintiff's motion to compel their production (Request #10, 37) is also **denied**.  The parties must rest on defendants' assertion that these items do not exist or are not in defendants' possession, custody, or control, with the parties aware of their Rule 26(e)(1) supplementation obligations.

C.      Overbroad, Burdensome and Irrelevant Production

Plaintiff claims stem from being in the RMU at Wende.  It is irrelevant to this case the fact that plaintiff previously was housed at Elmira (or other facilities) and received different treatment there.  Therefore, plaintiff's motion to compel production of irrelevant materials, such as the rules in Elmira, is **denied** (Requests #82, 75, 81).  Similarly, compelling production of those requests that were overly broad (such as any and all documents in a particular criterion) (Requests #12, 66, 67, 79, 80, 81, 87, 91) is also **denied**.

D.      Special Diet Guides (Request #12)

Plaintiff requested any and all Pro #3A diet guides although he was prescribed a special diet due to his dialysis.  Plaintiff has not shown the relevance of other modified diets.  He argues that the diet he was provided did not meet the standard that other facilities (including the Erie County Medical Center) would provide for end stage renal disease program (Docket No. 74, Pl. Affirm. at 5, Request #12).  Production of other DOCCS provided special or modified diets are not relevant to plaintiff's claim.  Other modified diets are diagnosis-specific and would not reflect what a proper end stage renal disease diet should be.  Plaintiff's motion to compel this production (Request #12) is **denied**.

E.      Diagrams of Wende (Request #90)

Plaintiff's request (Request #90) seeking diagrams of Wende is **denied**.  Defendants'

security concerns of providing floor plans to an inmate are legitimate, see Diaz v. Goord,

No. 04CV6094, 2007 U.S. Dist. LEXIS 71057, at *6 (W.D.N.Y. Sept. 25, 2007) (Payson, Mag.

J.), reconsideration denied, 2010 U.S. Dist. LEXIS 65352 (W.D.N.Y. July 1, 2010), aff'd,

2013 U.S. Dist. LEXIS 90836, at *9, 37 (W.D.N.Y. June 25, 2013) (Siragusa, J.).  In Diaz, the

plaintiff was an inmate proceeding pro se and he sought production of diagrams of B-Block of

Attica Correctional Facility but defendants opposed on security grounds, Diaz, supra, 2007 U.S.

Dist. LEXIS 71057, at *5-6.  Magistrate Judge Payson believed that "defendants' legitimate

security concern outweigh any possible relevance of the diagrams requested," denying plaintiff's

motion, reasoning that plaintiff could draw his own diagrams or testify to the distances and

dimensions at issue in that case, id. at *6.  A similar security concern exists here for providing

diagrams of cell blocks, the law library, gym areas, and docks of Wende to an inmate (see

Docket No. 105, Defs. Atty. Decl. ¶ 52).  Regardless of the relevance of such diagrams to

plaintiff's claims (regarding the distances between RMU and Wende's law library or Americans

with Disability Act reconstruction work at Wende), plaintiff has not overcome the security

concerns raised by defendants.  Plaintiff's motion to compel these diagrams (Request #90) is

**denied**.

III.    Plaintiff's Supplemental Requests

Defendants do not address plaintiff's supplemental requests (cf. Docket No. 74, Pl.

Motion at 13-15); either in responding to the motion or in filed discovery responses (cf. Docket

Nos. 105, 85).  Defendants are **to respond to plaintiff's supplemental requests** made in this

13

motion (Docket No. 74, Pl. Motion at 13-15) by **April 22, 2016**, or **30 days from entry of this Order**.  This response may include any applicable objections to production, including noting whether the sought items were already produced to plaintiff (with citation to the produced items).

## CONCLUSION

For the reasons stated above, plaintiff's motion (Docket No. 74) to compel is **denied**.

Defendants are to respond to plaintiff's supplemental requests (id. at 13-15) by **April 22, 2016**.

So Ordered.

/s/ Hugh B. Scott

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
        March 22, 2016

14